88   221
89    60

PATRICK W. CLORAN *vs.* PETER A. HOULEHAN.

Kennebec.    Opinion November 29, 1895.

*Attorney.   Debt.   Discharge.   R. S., c. 82, § 45.*

It is provided by R. S., c. 82, § 45, that "no action shall be maintained on a demand settled by a creditor, or his attorney intrusted to collect it, in full discharge thereof, by the receipt of money or other valuable consideration, however small."

A claim was intrusted to an attorney for collection by a person representing himself to be the authorized agent of the creditor, and after a careful investigation of the claim the attorney accepted one-half of the demand in full satisfaction and discharge of the whole debt.   The creditor. having refused to ratify the settlement, brought an action against his debtor to recover the full amount of his claim.   *Held*; That the question for the jury was not whether the attorney had special authority to compromise the claim; but whether the claim had been intrusted to him by the plaintiff; not whether the attorney exceeded his authority, but whether he had any authority at all from the plaintiff.

Upon a motion for a new trial, *the court are of opinion*, that in view of the existing method of effecting sales of merchandise and making collections by the aid of traveling salesmen and the mutual confidence that underlies the established usages in all departments of modern mercantile life, few business men would hesitate to act upon the presumption created by the facts and circumstances in this case that the person who intrusted the bill to the attorney for collection was the duly authorized agent of the plaintiff.   *Also*, that if this evidence was not sufficient to require the court to submit the question to the jury, the corroboration afforded by the newly-discovered evidence renders it sufficient; and that the defendant is entitled to have the jury pass upon this evidence in connection with that introduced at the trial.

ON MOTION AND EXCEPTIONS.

This was an action of assumpsit tried to a jury in the Superior Court, for Kennebec county, and a verdict having been rendered in favor of the plaintiff, the defendant took exceptions and filed a general motion for a new trial.   There was also a motion for a new trial founded on newly-discovered testimony.

The case is stated in the opinion.

*Emery O. Beane and Fred E. Beane*, for plaintiff.
*George W. Heselton*, for defendant.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

WHITEHOUSE, J.   This is an action of assumpsit to recover the sum of sixty dollars for one thousand cigars sold and delivered to the defendant at Gardiner by F. J. Roberts, a traveling salesman for the plaintiff, whose place of business was in Lynn, Mass.

The defendant admitted the receipt of the goods, but denied that there was anything due on the bill in suit, claiming that thirty dollars of the account had been paid to the plaintiff's agent, F. J. Roberts, and the balance to the plaintiff's attorney, C. L. Andrews of Gardiner, who was said to have been subsequently employed by another traveling agent of the plaintiff to collect the claim or the balance due on it.

The verdict was for the plaintiff for the full amount claimed, viz., sixty dollars and sixty-four cents, and the case comes to this court on exceptions and a motion to set aside the verdict as against the evidence, and also a motion for a new trial on the ground of newly-discovered evidence.

It was not in controversy that Mr. Andrews was employed as an attorney at law to collect the claim, by some one representing himself to be the authorized agent of the plaintiff, and that in pursuance of this employment, after a careful investigation of the matter, Mr. Andrews in good faith accepted from the defendant the sum of thirty dollars as "payment in full" of the plaintiff's claim, and forwarded a check for that amount to the plaintiff.   But the plaintiff repudiated this settlement and returned the check to Mr. Andrews with directions to restore the money to the defendant.   The defendant, however, declined to accept it when thus tendered to him.   After the lapse of a year and a half the plaintiff employed other counsel to commence this suit.

It is provided by section forty-five of chapter eighty-two of the Revised Statutes that "no action shall be maintained on a demand settled by a creditor, or his attorney intrusted to collect it, in full discharge thereof, by the receipt of money or other valuable consideration, however small."   It was not controverted that Mr. Andrews drew thirty dollars in money on the check received from the defendant and that in accordance

with the terms of the receipt given to the defendant at the time, this payment was mutually understood to be an extinguishment of the whole debt. If, therefore, Mr. Andrews was the plaintiff's attorney "intrusted to collect the demand," it had been settled and this action subsequently brought upon it could not be maintained, whether the prior payment of thirty dollars alleged to have been made to Roberts had in fact been made or not. The question for the jury, therefore, was not whether Mr. Andrews had special authority to compromise the claim, but whether he was the plaintiff's "attorney intrusted to collect it;" not whether he exceeded his authority, but whether he had any authority at all from the plaintiff.

Upon this branch of the case the presiding judge instructed the jury as follows : "It was claimed by the defendant at the outset that the whole bill had been paid, that thirty dollars was paid to Mr. Roberts, the agent of the plaintiff, and that thirty dollars more was paid by check to Mr. Andrews, an attorney for the plaintiff. But in order to show that a payment to an agent, or one who is claimed to be the agent, was a payment to the principal, it was necessary to show that the agent had authority to make *such settlement*; and in this case, inasmuch as the defendant's proof, in my opinion, fell short of showing authority on the part of Mr. Andrews to collect the bill, and the evidence showing that whatever he did as the agent and attorney of the plaintiff was repudiated by the plaintiff and he was requested to return the check, I have excluded testimony upon that point as insufficient to show that Mr. Andrews had in fact authority from the principal to accept payment *in the way testified to by him*. So that is laid out of the case."

The plaintiff had employed four different traveling agents who successively visited the defendant's place of business in Gardiner during the two years prior to the alleged settlement of this claim, but neither Mr. Andrews nor the defendant was able to state the name of the person who left the claim in question in Mr. Andrew's office for collection. It is in evidence, however, that on the day the claim was left with Mr. Andrews a man appeared in the defendant's place of business in Gardi-

ner acting as the plaintiff's agent for the collection of bills ; and it subsequently appears from the description of this man given by the defendant and the description by Mr. Andrews of the man who employed him to collect the bill, that the two agents were one and the same person. He had in his possession the necessary data to enable him to make a correct statement of the defendant's account, together with other bills of the plaintiff against other parties, and such printed bill-heads as were uniformly furnished by the plaintiff to his agents. E. F. Cloran, the plaintiff's son and book-keeper, who was himself a traveling salesman for the plaintiff at one time, testified that their agents were authorized to collect bills, but not to settle for less than the face of the bills without special permission from the house. It further appears from the testimony of this witness, and of F. J. Roberts, that it was in the usual course of the business for the plaintiff's agents to employ an attorney-at-law to enforce the collection of doubtful or disputed claims. Mr. Andrews testified that he received one letter, if not two, directly from the plaintiff's house, but had been unable to find either of them after careful search, and gave his recollection of the contents of one of them as follows : "I think the contents were that they declined to accept any such settlement as I had made in the matter, and wished me to return the money to Mr. Houlehan, *and bring action on the case.*"

In view of the existing method of effecting sales and making collections by the aid of traveling salesmen and the mutual confidence that underlies the established customs and usages in all departments of modern mercantile life, few business men would hesitate to act upon the presumption, created by the facts and circumstances above stated, that the person who intrusted the bill to Mr. Andrews for collection was the plaintiff's duly authorized agent. The contents of the letter received by the attorney directly from the plaintiff's house show a clear and distinct recognition by the plaintiff of the attorney's general authority to collect the bill, with further directions to commence an action upon it. If this evidence was not sufficient to require the court to submit to the jury the question whether Mr.

Andrews was the "plaintiff's attorney intrusted to collect the bill," we think the corroboration afforded by the newly-discovered evidence should render it sufficient. Since the trial both Mr. Andrews and the defendant have seen and conversed with the person who on the same day called at the defendant's place of business and left the bill in question with Mr. Andrews for collection, and identified him as Homer Bush, who according to the testimony of E. F. Cloran was then the plaintiff's authorized agent. We think the defendant is entitled to have a jury pass upon this evidence in connection with the other evidence introduced at the trial tending to show that the settlement of the demand in suit was made by the plaintiff's "attorney intrusted to collect it," and that the entry should be,

<div align="right">

*Motion sustained.     New trial*
*granted.*